Aug. 11, 1877. COCHRAN v. FLINT.

*Fixtures.*

In order that the property in a chattel pass by the act of affixing it to real estate in such way only that it may be removed without material injury to the realty, it must be affixed by the owner, or with his assent.

A, having in his possession machinery the legal title to which was in B, affixed it to and used it in his saw-mill, which was then under a mortgage to C, in such way that it could be removed without destruction or material injury to the building. B had no actual knowledge of the mortgage, and never consented to the annexation any further than his assent should be inferred from the nature of the property, and the use for which it was designed. *Held,* (1) that B was not put upon inquiry into the state of the title to the mill so as to be charged with constructive notice of the mortgage; (2) that the act of A in affixing the machinery to the mill was not sufficient, under these circumstances, to make an annexation in law so as to subject the property to the operation of the previously existing mortgage.

FROM GRAFTON SUPREME JUDICIAL COURT, TRIAL TERM.

BILL IN EQUITY, by John H. Cochran against Charles M. Flint and others, praying for an injunction to restrain the defendants from taking certain machinery out of a saw-mill in Dorchester.

An answer and a replication thereto having been filed, the case was tried by the court, who found the following facts:

On March 15, 1871, the plaintiff conveyed a tract of land with said saw-mill thereon to Jones & Parks, who mortgaged it back to him to secure part of the purchase money. Said mortgage was seasonably recorded, and is still outstanding. In the autumn of 1872 Jones & Parks took out of the mill the water-wheel and saw, and put in a "Flint's Patent Saw-Mill" and a "Hunt's Turbine Water-Wheel," with the usual accompanying machinery. Said articles were procured of the defendant Flint, upon the written agreement of said Parks that they were "to remain the property and subject to the order of C. M. Flint until paid for in full." Said articles were annexed to the mill in the manner in which such machinery is usually annexed to saw-mill buildings, and they are still unpaid for.

At the time this new machinery was put into the mill, the plaintiff had no notice of the agreement that it was to remain Flint's property until paid for.

Judgment is to be rendered according to the opinion of the court at the law term.

The bill and answer, and all documentary evidence used at the trial, are made part of this statement.

*Carpenter* (with *W. A. Flanders*), for the plaintiff.

I. It is suggested that an injunction will not be granted in a case like this until the plaintiff has established his right at law.

1. In considering this point, it must of course be assumed that the machinery in question is a part of the freehold, and the property of the plaintiff; and the question is, simply, whether a court of equity will interfere by injunction to restrain a mere wrong-doer from tearing down and destroying a man's dwelling-house, saw-mill, or other building.

To state the question is to answer it. The injury is at the same time irreparable, and incapable of being adequately compensated in damages, in the sense in which these terms are used in the law. *Lynde* v. *Rowe*, 12 Allen 100; *Jerome* v. *Ross*, 7 John. Ch. 315, 331–336, and cases there cited; *Mitchell* v. *Dors*, 6 Ves., Jr., 147; *Farrand* v. *Marshall*, 19 Barb. 380—S. C. on Appeal, 21 Barb. 409; 2 Story's Eq. Jur., secs. 927–929, and cases there cited; *Robinson* v. *Byron*, 1 Bro. 588, and notes.

2. By virtue of the conceded interest of the defendants in the machinery, they have the right to redeem. The parties stand to each other in the relation of mortgagee and mortgagor, and the case is the familiar one of an application for an injunction to stay waste. 2 Story's Eq. Jur., sec. 1017; *Moulton* v. *Stowell*, 16 N. H. 221.

3. The defendants assume to act under the license of the mortgagors, and, therefore, though entire strangers to the plaintiff, will be enjoined. *Hastings* v. *Perry*, 20 Vt. 272.

II. It is suggested, also, that the case does not find distinctly that the machinery was so affixed to the freehold that it would pass with it, as between vendor and vendee; that the court cannot know how such machinery is " usually annexed."

1. The finding that the machinery was annexed to the building is sufficient,—at least, *prima facie*.

2. Unless it was so affixed that it would pass as between vendor and vendee, the plaintiff never had, and nobody ever pretended that he had, a shadow of any case. The court therefore plainly must have intended to find that it was so affixed.

3. If the facts do not appear sufficiently to enable the court to determine the rights of the parties, then the case should be sent back for a further hearing in order that they may be found. The case, it is to be remembered, is not the statement of the parties, but the report of the judge who tried the cause, and had all the facts before him. The plaintiff ought not to be slaughtered because the judge's report is so ambiguous and imperfect (if such be the fact) that no judgment can be rendered thereon.

III. The four following propositions are substantially conceded by the defendants, and are therefore here set down, with a citation of a few only of the very numerous authorities by which they are supported.

1. Whenever A's chattel is by him annexed to the freehold of B, without B's consent, either express or implied, that it shall remain a

chattel, and subject to removal, and in such a manner that it would pass with the freehold as between vendor and vendee, it becomes instantly a part of the realty, and as such the property of B. *Lancaster* v. *Eve*, 5 C. B. N. S. 717; *Howard* v. *Fessenden*, 14 Allen 128; *Oakman* v. *Ins. Co.*, 98 Mass. 57; *Baldwin* v. *Breed*, 16 Conn. 60, 66, 67; *Curtiss* v. *Hoyt*, 19 Conn. 165, 166; *Landon* v. *Platt*, 34 Conn. 517; *Washburn* v. *Sproat*, 16 Mass. 449; Bull. N. P. 34; *Fryatt* v. *Sullivan*, 5 Hill 116; *Bean* v. *Brackett*, 34 N. H. 118, and cases there cited;— see, also, *Silsbury* v. *McCoon*, 3 N. Y. 379, and note. Though the chattel so annexed by A be the property of a third person, yet, if annexed with his assent, the result is necessarily the same.

2. If a mortgagor annex in like manner his own chattels to the mortgaged premises, they also become instantly a part of the realty, and as against him the property of the mortgagee. *Butler* v. *Page*, 7 Met. 42; *Winslow* v. *Ins. Co.*, 4 Met. 306; *Pettingill* v. *Evans*, 5 N. H. 54; *Belcher, ex parte*, 4 Dea. & Ch. 703; *Reynal, ex parte*, 2 Mont. D. & D. 443; *Walmsley* v. *Milne*, 7 C. B. N. S. 115; *Climie* v. *Wood*, 3 L. R. Exch. 257; *Longbottom* v. *Berry*, 5 L. R. Q. B. 123; *Pierce* v. *George*, 108 Mass. 78.

3. If a third person annex his chattels to the mortgaged premises without the assent of either the mortgagor or mortagee to their removal, the result is the same.

To the contrary of these three propositions is to be found neither authority nor dictum. The last two are, in fact, in view of our mortgage law, mere corollaries of the first. They are also, as before stated, substantially conceded.

4. It is also conceded that a mortgagee, as well as an absolute grantee without notice, takes and holds, under his conveyance, chattels so affixed prior to the execution of his deed, although as against the mortgagor or grantor they were the property of a third party with the right to disannex and remove them. *Richardson* v. *Copeland*, 6 Gray 536; *Powers* v. *Dennison*, 30 Vt. 752; *Corey* v. *Bishop*, 48 N. H. 149, 150; *Landon* v. *Platt*, 34 Conn. 517; *Prince* v. *Case*, 10 Conn. 375; *Haven* v. *Emery*, 36 N. H. 66; *Hunt* v. *Iron Co.*, 97 Mass. 279.

IV. What effect it might have upon the rights of the parties if Jones & Parks had annexed the machinery in question to the freehold, in fraud of the defendants' rights or without the defendants' assent, need not here be discussed, because the question does not arise.

Here the defendants did assent to and authorize the annexation.

1. The case so finds. It finds, in substance, that the defendants sold the machinery to Jones & Parks conditionally, and delivered it to them; whence it follows, as a legal conclusion, that the defendants authorized them to put the machinery to its ordinary and usual use. A conditional vendor, by the sale and delivery of the possession, by implication of law authorizes his vendee, so long as he permits him to retain the possession, to use and enjoy the property in the usual and ordinary way. Without such authority the possession is utterly valueless : the property might as well remain in the possession of the vendor.

" When a thing is granted, that also is granted without which the thing cannot be enjoyed." Broom's Leg. Max. 463, and cases cited.

A conditional vendee has greater rights in the property than a mere bailee for hire : he has the possession, coupled with a right to make it absolutely his own—is in fact the equitable owner of it—" possessed of all the rights which attach to and follow the possession of a chattel by its owner "—so long, at least, as he is permitted to retain the possession. LADD, J., in *Pinkham* v. *Mattox*, 53 N. H. 604–606.

By implication of law his vendor gives him authority and license to use and enjoy it, and therefore to annex it to his, the vendee's, freehold, if only, by annexation to some freehold, it can be beneficially used at all. He may ride and drive the horse, work the oxen, milk the cow, set out the apple-trees in his soil, put the fence-posts or the drain-tile in his land, the shingles, doors, window frames, blinds, &c., upon his house, and the water-wheel, gearing, and machinery in his saw-mill. To this point *Davenport* v. *Shants*, 43 Vt. 546, is a direct authority ; and so, also, is *Williams* v. *Allsup*, 10 C. B. N. S. 417 ;—*vide*, also, Story on Bailments, sec. 255.

It has been suggested that the question of authority or license is one of fact, and that the fact is not found in the case ; in reply to which I insist that the authority to use and enjoy the property follows as a conclusion of law from the facts which are found in the case. Suppose a special verdict, finding the conditional sale and delivery of the machinery to Jones & Parks, the issue joined being upon the question of the right of Jones & Parks to use and enjoy it while permitted to remain in their possession, could the court render no judgment ?

If it be said that the case does not find distinctly as a fact that the machinery could not be beneficially used and enjoyed without annexation to the freehold, I reply,—

(1) That the court, however it may be as a matter of strict law, may well be presumed by a judge, in stating a case for their opinion, to possess such items of general knowledge as are common to all men in the community where they live ;—as, for example, that steam-engines are made of metal and not of wood, and are used to propel machinery ; that shingles are commonly affixed to the roofs of buildings, fence-posts usually set in the ground ; that a common wagon wheel is not ordinarily affixed to the freehold, while a water-wheel in a saw-mill is, and necessarily must be.

(2) The fault (if there be one) is not that of the plaintiff, but of the judge who tried the case, who had all the facts before him ; and the consequences should not be visited upon the plaintiff, especially in a case where it is so plain from the nature of the case what the fact must be.

(3) If a fact material to the rights of the parties is not found,—for example, in a special verdict,—then the trial is a mis-trial, and the case must be sent back in order that the fact may be found. *Tancred* v. *Christy*, 12 M. & W. 316 ; *Hubbard* v. *Johnstone*, 3 Taunt. 209.

2. The bill alleges, in substance, that the machinery was affixed to

the freehold with the defendants' knowledge and assent. The answer states, in general terms, that while the defendants had no knowledge of the particular saw-mill into which the machinery was to be placed, they nevertheless understood that it was to be put into some mill in the neighborhood of Wentworth, to which place it was forwarded. But the particular mill or place is entirely immaterial: the assent of the defendants to its annexation to any mill, anywhere, is sufficient. An understanding, as stated in substance in the answer, that it was to be annexed to some freehold, no particular freehold being specified, is an understanding that it might be annexed to any freehold. It is submitted, therefore, that the bill and answer, independent of any finding of the court below, established the facts that the defendants authorized and consented to the annexation of the machinery to the freehold in question. The bill and answer, it may be noticed, are made a part of the case.

V. To the suggestion that although Jones & Parks, by the sale and delivery to them of the machinery in question, took an implied authority to annex it to their unincumbered freehold, yet that no such authority or license can be implied to annex it to their mortgaged estate, I reply that upon the bill and answer the defendants must be taken to have expressly assented to its annexation to the particular mill in question. The bill distinctly alleges such to be the fact. The answer merely denies that the defendants knew the exact location of the mill, but explicitly admits that the defendants " understood " that it was to be " set up " in the defendants' mill, and also (since it does not deny the allegations of the bill) that they assented to its annexation to their (Jones & Parks's) mill. It is not suggested that they had any interest in any other mill in that neighborhood, or elsewhere.

VI. But independent of the allegations of the bill and answer, by the conditional sale and delivery of the property Jones & Parks became by implication authorized to annex it to their mill, whether the same was mortgaged or not.

1. The implied authority was, to annex it to their mill wherever the same might be and whatever the nature of their title thereto, even though it were an equitable one only. There is no suggestion that Jones & Parks owned or were interested in any other mill, and they were authorized to annex it to some mill, since otherwise they could make no use of it. It is not to be supposed that the defendants expected it to be annexed to the mill of a stranger, and the inference is irresistible that the understanding of both parties was that it was to be annexed to the mill of Jones & Parks, the particular mill in question. There being no charge of fraud, the defendants must be presumed either to have been correctly informed regarding the title, or to have made no inquiry on the subject. That a consequence results from the annexation, which neither party expected, cannot affect either the fact or extent of the license, any more than it could if the defendants had witnessed the annexation or made it themselves. Suppose the defendants had stood by and seen the machinery put in, making no inquiry and

receiving no information regarding the title: the law would imply a license to annex to that particular mill without regard to the title. They would, indeed, in the absence of fraud, be estopped to deny the license, even though the mill were the property of a stranger. But are they any less estopped to deny a license to annex to Jones & Parks's mill, when they deliver the machinery to them knowing that they buy it for the purpose of annexing it to their mill, than they would be by witnessing the annexation? What is the legal difference in this respect between standing by and seeing the property annexed to Jones & Parks's mill, and delivering the property to Jones & Parks for the purpose of being annexed, or with the knowledge and understanding that it is to be annexed, to their mill; no information regarding the title being asked or received in either case?

2. What was the understanding of the parties? Did Jones & Parks understand that they had no right to set up the machinery in their mortgaged mill? To state the question is to answer it. Did the defendants so understand? It is equally clear that they did not, for they either knew the mill was mortgaged, or they delivered the property to be set up therein without making any inquiry on the subject.

3. But the defendants had knowledge of the plaintiff's mortgage: the record was in law constructive notice to them, and not merely evidence of notice. In *Hunt* v. *Haven*, 56 N. H. 87, the record was of a deed subsequent to that under which the defendants claimed, not in their chain of title, and was offered not as evidence of title, but to establish a collateral fact. The rule is clear, that the record of a deed is notice to all who subsequently acquire through the grantor any interest in the premises thereby conveyed. Here it is undeniable that the defendants, through Jones & Parks, by virtue of the annexation, acquired an interest in the property covered by the mortgage;—they owned a part, and Jones & Parks the remainder; they were entitled to redeem the mortgage. *Vide Davis* v. *Wetherell*, 13 Allen 60.

So far as this question is concerned it can clearly make no difference how they authorized the annexation—whether they assented by implication or explicitly, whether they stood by and witnessed it, or made the annexation themselves. In all the cases herein cited as being "directly in point" upon the main question, beginning with *Stantons* v. *Thompson*, there was no notice of the mortgage except constructively by the record. The defendants here (like the claimants in those cases) stand in all respects like subsequent purchasers, and the record is conclusive evidence of notice. From this position there is no escape, and I submit that it is of itself a conclusive answer to the suggestion which I am combating. The fact that the plaintiff's mortgage was duly recorded is, to be sure, not found in the case, but it is alleged in the bill and not denied in the answer. It was in evidence at the trial, and was not stated in the case, for the reason, probably, that neither the judge who tried it nor anybody else conceived it to be material.

4. Suppose the defendants had added to their bill of sale the following, namely, " hereby authorizing said vendees to annex said wheel,

&c., to their freehold," or " to annex said wheel, &c., to, and use the same in, their saw-mill in Dorchester:" would those words add to or subtract from the rights of the parties one jot or tittle ? Do they not express exactly what the law implies without them ? If that be so, can the court in the one case any more than in the other annex the qualification, " provided said freehold or said mill be unincumbered " " ? Suppose Jones & Parks were tenants for life, or seized of a conditional fee : is the further qualification to be added, " provided, also, that the title of said vendees to said mill is an absolute fee simple " ?

5. The proposition that a conditional vendee, for example, of draintile, fence-posts, apple-trees, &c., &c., upon a credit of say a year, takes, with a delivery of the articles, no right to use them, no right to affix them to his freehold in case it happens to be mortgaged for any sum no matter how small, strikes me as altogether novel and startling. It is idle to say that the vendor did not authorize the annexation to a mortgaged soil, for that is the very question. Did the parties understand that there was any such limitation ?

Take the case of apple-trees : If the vendee cannot set them out in his mortgaged soil, having no other, they must necessarily wither and die ; but for suffering them to do so he would clearly be liable to the vendor in an action on the case. If he sets them out, he is liable in trover; if he does not, in case. The commission of a tort is unavoidable, to do right impossible, unless, as I maintain, the understanding of the parties was that the vendee should have the right to annex the articles to his freehold, whatever the character of that freehold might be.

6. The defendants are estopped to deny that they assented to the annexation. They clothed Jones & Parks with all the *indicia*, if not of ownership of the machinery, certainly of the right to use and enjoy it, and to annex it to their mill for that purpose ; and the plaintiff (as the case in substance finds) permitted Jones & Parks to dismantle the mill—take out all the old machinery—upon the faith that the new was to be substituted in its place. The plaintiff acted—parted with his security, his property—upon the faith that the apparent right which the defendants had conferred upon Jones & Parks was a real one. *Davenport* v. *Shants*, 43 Vt. 546. The doctrine, that where one of two innocent persons must suffer by the wrong of a third, he shall suffer who has empowered such third person to do the injury, is applicable here. *Nixon* v. *Brown, ante* 34.

The plaintiff was not a purchaser of Jones & Parks, there was no call upon him to inquire into their title, there was no laches on his part, he was not in a position to require a warranty. The maxim *caveat emptor*, therefore, does not apply. Broom's Leg. Max. 739.

7. The rights of a conditional vendor are an anomaly in the law, and ought not to be extended. In Vermont such sales are required by statute to be expressed in writing and recorded. The general policy of our own law requires security to be taken by mortgage, that everybody may have notice of the state of the title. Such sales open a wide door

to fraud, and have been denounced by some of the ablest courts in the country. *Haggerty* v. *Palmer*, 6 Johns. Ch. 437 ; *Keeler* v. *Field*, 1 Paige 312 ; *Smith* v. *Lynes*, 5 N. Y. 41; *Martin* v. *Mathiot*, 14 Serg. & R. 214 ; *Rose* v. *Story*, 1 Barr 190.

It is enough that such vendor be entitled to follow his property so long as it remains the same in species as when he parted with the possession. When so changed that its identity is lost, even technically, and though by the wrongful act of the vendee, and it has passed to a *bona fide* holder without notice, the vendor should be remitted to his right of action.

8. But it is said that annexation to a mortgaged freehold is inconsistent with the stipulation that the property shall remain the vendor's until paid for ; in other words, that no authority can be implied to do anything with the property inconsistent with the maintenance of the vendor's right therein.

In addition to what has been already said bearing upon the point, I submit,—

(*a*) The premise assumed is without foundation. If the effect of the annexation were certainly and inevitably to destroy the vendor's right of property, there would be more sense in the argument. But such is not the case. The utmost that can be said is merely that it may in some possible contingencies have that effect : the vendor's right of property is merely put in jeopardy. The mortgage may be paid ;—if not, the mortgagee may never assert his right, may not elect to enter upon the possession. The vendor remains the legal owner as against all the world except the mortgagee, and as against him retains the equitable title—the right of property—of which the mortgagee cannot deprive him.

To be of any weight in this case the argument must go to the length of asserting that no license can be implied to do anything with the property, the effect of which may be, in any possible event, to deprive the vendor of his right of property—a proposition which cannot stand for a moment ; for

(*b*) The argument proves too much. Any user of any article delivered under such a contract is necessarily to some extent inconsistent with the preservation of the vendor's right of property : the effect in all conceivable cases is, to divest him of a portion at least of the property, namely, the natural wear and tear, which may be very small or very great, according to the nature of the article and the extent of the user.

It clearly does not follow, from the fact that the effect of the user is to destroy the vendor's security or his property, that therefore the vendee cannot use it ; on the contrary,

(*c*) In so far as the stipulation that the property shall remain the vendor's is inconsistent with the right of the vendee to use and enjoy it, the former must give way. The authority to use and enjoy is implied not from the sale alone, but from that and the subsequent delivery of the possession, and mainly from the latter.

If the vendor retain the possession, no question of this sort can arise ; if he deliver it, he thereby waives so much of the stipulation in his favor as may be inconsistent with the putting of the property to its ordinary and usual use. Suppose the contract provides in terms that the possession, as well as the property, shall remain with the vendor until payment, but that it is nevertheless delivered to the vendee. In short, inasmuch as the delivery of the possession is in point of time necessarily subsequent to the contract of sale, and inasmuch as no conceivable reason for the delivery can be assigned, unless it be to enable the vendee to use and enjoy the property, I insist that such delivery is a waiver of all stipulations of the contract inconsistent with such user, even though it involve necessarily the total destruction of the property,—much more, if the destruction be merely possible and contingent.

Take any of the large class of articles which are consumed in the use,—as, for example, provisions and clothing : Can the vendee neither eat the one nor wear the other ?—and if so, to what end were they delivered to him ? Why did not the vendor retain the possession as well as the property ?

9. It seems sufficiently clear that an annexation, if made without authority, is a conversion for which the vendee is liable in trover. Now,

(a) The conversion (if there be one) is complete at the very moment of annexation. A subsequent payment of the mortgage, even though it be made the next day or the next hour, cannot heal or qualify it. *Woodman* v. *Hubbard*, 25 N. H. 67. The vendor, therefore, may recover the full value of the property at once, long before the expiration of the term of credit, and although the mortgage may be fully paid before the commencement of the suit. The amount of the mortgage and the value of the estate are alike immaterial ;—the one may be $100 only, and the other $100,000 : the result is the same.

(b) Again : would annexation to the vendee's estate for life—his base or qualified fee, his conditional fee, his estate of mortgagee in possession, or his estate by disseizin, the title being bad, although he claims it in good faith believing it to be good—constitute a conversion ? In all these cases, plainly, the vendor may lose his security—his property—by the determination of the estate.

If, as I maintain, it is impossible, nay ridiculous, to affirm that the vendor, when he authorizes the annexation to some freehold, excepts all freeholds of the character above mentioned, the conclusion necessarily follows that he authorizes its annexation to any freehold whereof the vendee may be seized.

(c) The suggestion, that " the plaintiff here insists that the freehold is in the mortgagee to enable him to hold the property, and in the mortgagor for the purpose of getting it away from the defendants," is unfair and deceptive in so far as it seems to intimate that the plaintiff " blows hot and cold," shifts his position according to the exigencies of his case.

It is, in fact, merely a suggestion (coupled with an entirely unfounded and injurious insinuation) that the plaintiff here insists upon the exact

law, namely, that as between mortgagor and mortgagee the freehold is in the latter for all the purposes of his security, while for all other purposes, and as regards all other persons, it is in the former; that while it is in the plaintiff, as between him and Jones & Parks, for the purpose of his security, as regards all other persons and for all other purposes it is in Jones & Parks.

Nowhere is the law more accurately and concisely stated than by PARKER, C. J., in *Lyman* v. *Hibbard*, 18 N. H. 233. " The mortga gee," he says, " is not to be regarded as the owner of the land, except at his election and for the preservation of his rights: the mortgage is a mere security or charge upon the land, but not a title until the mort-gagee sees fit to assert his rights as the owner of the estate. The mort-gagee, having never entered or asserted any title, cannot be treated as the tenant of the freehold, or in fact as having any possession." That case, also, it may be remarked, furnishes a decisive answer to the inti-mation that a mortgagor in possession is not at law the tenant of the freehold.

VII. The main question in the case then is, whether a mortgagee holds, under his mortgage, chattels annexed to the mortgaged premises by a third party in such a manner that they would pass with the realty as between vendor and vendee, but under an agreement with the mort-gagor that they shall remain chattels, and that such party may at his pleasure disannex and remove them;—or more exactly stated, in ac-cordance with the facts in this case, whether the owner of a chattel an-nexed with his assent by a mortgagor in the manner aforesaid, under such an agreement with the mortgagor, can lawfully dissever and re-move the same.

1. Independent of all authority directly upon the point, it follows as a necessary and inevitable result from the foregoing conceded proposi-tions—indeed, from the first proposition alone—in connection with our law of mortgage, that he cannot. From this conclusion I assert de-fiantly that there is no possible logical escape. The premises being admitted, the conclusion is inevitable.

In this state, as well as in Massachusetts, some other states, and in England, as between mortgagor and mortgagee the latter is the owner of the land, seized of the legal estate, possessed, in short, of all the' rights of ordinary grantees in fee, subject to a condition which has not been performed, while the former is merely his tenant by sufferance, entitled to no notice to quit, nor to take emblements. *Brown* v. *Cram*, 1 N. H. 169; *Hobart* v. *Sandford*, 13 N. H. 226; *Furbush* v. *Goodwin*, 29 N. H. 332; Mor. Dig. 475, d.; *Keech* v. *Hall*, Doug. 21; 1 Smith's Lead. Cas. 293, and notes Eng. and Am.; *Walmsley* v. *Milne*, 7 C. B. N. S. 133; *Robey* v. *Maisey*, 8 B. & C. 767.

" The mortgagor only holds possession of the land by the permis-sion of the mortgagee, who may by ejectment, without giving any no-tice, recover against him. In this respect it is said the estate of a mortgagor is inferior to that of a tenant at will. Although judges have found it difficult to describe in proper terms the relation of mort-

gagor in possession and mortgagee, yet I think it clear from all the cases that a mortgagee, who merely receives his interest from the mortgagor in possession, may at any time eject the mortgagor, and that such mortgagor can do nothing to prejudice the mortgagee without his consent." HOLROYD, J., in *Reynal, ex parte*, 2 M. D. & D. G. 443. The mortgagor "can make no lease or contract respecting the mortgaged premises effectual to bind the mortgagee, or prejudicial to his title." SEWALL, C. J., in *Perkins* v. *Pitts*, 11 Mass. 130. No end of cases might be cited to the same effect.

Of what avail, then, as against the mortgagee, is the license or authority of the mortgagor to remove a chattel once annexed to the freehold? It is conceded that chattels annexed by the mortgagor, whatever his intention (which is wholly immaterial), pass at once to the mortgagee, and cannot as against him be removed by anybody. Upon what principle of law or common-sense, then, can he confer upon another a power and a right which he does not himself possess? He cannot himself reap the crops which he has sown : can he confer the right to do so upon his tenant ? He cannot himself sever chattels which have been annexed to the estate : can he empower another to do so ?

A tenant for life cannot by contract with his tenant bind the remainder man, so as to authorize the removal by his under-tenant, after the determination of the life estate, of structures which, in the absence of such agreement, would be permanent accessions to the estate—*Haflick* v. *Stober*, 11 Ohio St. (N. S.) 482; *White* v. *Arndt*, 1 Whart. 91;—that is to say, what the tenant for life or his legal representatives cannot do, he cannot authorize another to do.

It is conceded that the defendants might sever the machinery as against Jones & Parks, the mortgagors ; that as to them it must by reason of their agreement still be deemed personal property, because " the agreement of the parties supersedes the general rule of law ;"— and that is all that was decided in *Haven* v. *Emery*, 33 N. H. 66.

A chattel may well bear a double character—*quoad* the mortgagee, a part of the realty, and *quoad* the mortgagor, by virtue of his agreement, a chattel merely—precisely as a chattel annexed to land, of a vendor may be, by reason of his assent to its annexation with a right to remove the same so far as he is concerned, a mere chattel, while in respect to his *bona fide* vendee without notice it is a part of the freehold.

It is said to be " clear that the mortgagee cannot stand any better than the mortgagor. If the annexation or incorporation were such that the machinery thereupon became the property of Jones & Parks against their express agreement, then upon familiar principles it would become subject to their mortgage already existing upon the land, but until it became their property, either by contract or adjunction, the previously existing mortgage would not have any operation or effect upon it." I submit that this is not only not " clear," but clearly wrong. The proposition cannot stand. It does not follow that the defendants have the right to disannex the chattels as against the mortgagee, because they have that right as against the mortgagors. It might with

far greater plausibility be argued that such would be the result were the annexation made prior to the mortgage under a similar agreement, for in that case the mortgagee can make no claim to the property except through his mortgagor; yet it is conceded that the mortgagee without notice would hold it—would " stand better than his mortgagor."

The fundamental error here lies in assuming that the plaintiff makes and must make his title to the machinery through Jones & Parks, his mortgagors, whereas such is not the fact at all. On the contrary, the plaintiff claims the machinery by virtue of his legal estate in the land, precisely as if he were an absolute grantee of the premises. In fact, as between mortgagor and mortgagee, and for all purposes of his security, the latter has all the rights of an absolute grantee, without any exception whatsoever. *Vide* cases before cited.

Indeed, there is much more solid ground for holding that a mortgage covers chattels affixed to the premises after its execution, than those annexed before. While some courts have held that a *bona fide* vendee without notice does not take a chattel, affixed to the granted premises before the conveyance by a third party, with the grantor's assent, and with the right to remove it (in which case it may, with at least some color of reason and good sense, be said that the vendee claims through the vendor, and therefore can get no greater rights than the vendor had—*Russell* v. *Richards*, 1 Fairf. 429; *Ford* v. *Cobb*, 20 N. Y. 344; *Mott* v. *Palmer*, 1 N. Y. 564), not a case is to be found in the whole range of common law authorities in which it has been held that a chattel so annexed after the conveyance does not become instantly a part of the realty and the property of the vendee, nor even a dictum to that effect; and, as before stated, for all the purposes of this question a mortgagee is a vendee.

2. But we are sustained in our position not only by the irresistible conclusions of logic drawn from the fundamental doctrines of the common law, but also by an overwhelming weight of authority directly upon the point. I cite (1) *Stantons* v. *Thompson*, 49 N. H. 272. This case came before the law court upon two occasions not reported. It was first reserved, Sept. term, 1864, by BARTLETT, J. The case (which I have before me) finds the facts respecting the defendant's title, and the circumstances under which the machine was put into the mill, substantially as in the reported case; and that " the defendant did not know of the arrangement between Hutchinson and the plaintiffs until after he had taken possession under his mortgage." It also sets forth with great particularity the manner in which the machine was attached to the mill, and, " upon these facts being agreed to as the facts in the case, the court directed a verdict for the defendant, subject to the opinion of the whole court." It is obvious that the only question upon this case was, whether the machine was so annexed to the freehold as to pass with it to the defendant under the mortgage as against the conditional vendors. At the June term, 1865, DOE, J., delivered the opinion of the court, holding that the machine became, by the annexation, a

part of the realty, and was, therefore, covered by the defendant's mortgage. The opinion itself I have not been able to obtain. In Judge Sawyer's brief in the reported case it is stated as follows: "The facts found in the case were submitted as an agreed case, for the purpose of obtaining the opinion of the court upon the question whether upon the description of the portable mill and of the mode of annexation to the building it had become a fixture, and as such was held by the mortgage. The court held that it was such fixture.

Judge Stanley, of the counsel for the plaintiffs, says,—"I am confident that the question whether the machinery was so annexed to the mill as to pass with it, and to have the mortgage hold it, was distinctly raised, and decided in the affirmative in the first case."

It is to be inferred, from the fact that the case was not reported, that the court considered the point adjudicated neither "new" nor "doubtful"—Gen. Stats., ch. 200, sec. 3; Laws of 1859, ch. 2211, sec. 6 ; and this inference is supported by the recollection of the judge who delivered the opinion, who says,—"The question of the machinery being covered by the mortgage was probably not considered with great care as a doubtful question. My impression is, that that point must have been taken to be perfectly clear, but I have no definite recollections about it. I think I should have remembered it if there had been any question made or any doubt raised by any member of the court."

Independent of all this, an inspection of the reported case makes it very clear that the point in question must have been previously raised and decided. It is incredible that a point so vital and decisive for the defendant, lying as it did upon the very surface of the case, should not have been made by his distinguished counsel,—of whom one now sits upon the bench which the other for many years adorned. Moreover, BELLOWS, C. J., says (49 N. H. 280),—"It is apparent * * that, by reason of notice to the defendant before the quit-claim deed, his title under that to the machine was not good, when under the mortgage, if still subsisting, it would be good." The court held that the mortgage was " still subsisting."

A reference to the case reserved, September term, 1864, will show that the machine (a portable mill) was affixed to the mill with screws and bolts, with nuts, and was removable without any damage to the mill itself. It is submitted, therefore, that the case establishes the law of this state upon the point, and is a decisive authority for the plaintiff.

(2) Cotton, ex parte, 2 M. D. & D. 725, in which a trader mortgaged his premises and entered into partnership, and the firm carried on business on the same premises and erected trade fixtures, and then became bankrupt,—it was held that the trade fixtures belonged to the mortgagee and not to the assignees.

(3) Cullwick v. Swindell, 3 L. R. Eq. 249, was decided upon the authority of the foregoing case, the facts being substantially the same. DeGex, arguing for the plaintiff, in reply, says,—"This is not a case between landlord and tenant. A mortgagor who is a mere tenant by sufferance cannot give to a third party that which he does not himself

possess, namely, the right to remove fixtures as against the mortgagee. The lessee of a mortgagor must take the consequences of having taken a lease from the person who is not the legal owner."

That in these cases (*ex parte Cotton* and *Cullwick* v. *Swindell*) the mortgagor was a member of the firm which erected the fixtures is true, but that this fact was not considered of material importance seems plain, as well from the course of the argument as from the opinion of the court. Had the fact been otherwise, the decision would manifestly have been the same. No answer is suggested to the argument of DeGex, and none can be.

It is to be observed, also, that the question arose between the mortgagee and the assignees, not of the mortgagor but of the firm, which as against its creditors could not appropriate its funds to the payment of the debts, or for the benefit, in any form, of one of its members. Collyer on Part., sec. 920, and note.

(4) *Clary* v. *Owen*, 15 Gray 522, is directly in point. HOAR, J., says,— "It is conceded, in the argument of the plaintiff's counsel, that the mill-wheels, for the value of which this action was brought, must be considered, as between mortgagor and mortgagee, fixtures belonging to the realty. If the mortgagor had himself annexed them to the freehold, there could be no doubt that the mortgagee would hold them under his mortgage, and that they could not be severed without his consent. But it is contended that the mortgagor being in possession, and having agreed with Burghart that the wheels should remain the personal property of the builder until they were completed and provision made for paying for them, the wheels, having been set up under this agreement, could not be claimed and held by the mortgagee.

If this position were tenable, it would follow that the mortgagor could convey to another a right in the mortgaged premises greater than he could exercise himself. But it is well settled, that although the mortgagor, for some purposes and as to all persons except mortgagee, may be regarded as the absolute owner of the land, yet the title of the mortgagee is in all respects to be treated as paramount. The mortgagor cannot make a lease which will be valid against the mortgagee; and if the mortgagee enter, neither the mortgagor nor his lessee will be entitled to emblements; and we think it is not in the power of the mortgagor, by any agreement made with a third person after the execution of the mortgage, to give to such person the right to hold anything to be attached to the freehold, which as between mortgagor and mortgagee would become a part of the realty."

(5) *Lynde* v. *Rowe*, 12 Allen 100, was a bill in equity to restrain the defendants from removing certain fixtures from a building of which the plaintiff held a mortgage. The bill was sustained and an injunction granted. Although the tenant in this case was a co-partnership of which the mortgagor was a member, no stress is laid on that fact by the court.

The head-note of the case is as follows : " If after the execution of a mortgage of real estate, fixtures are added by a tenant at will of the

mortgagor, his right to remove them after an entry by the mortgagee for the purpose of foreclosure must be determined by the rule which prevails as between mortgagor and mortgagee, and not that which prevails as between landlord and tenant." HOAR, J., says,—"The doctrine is well settled, that although the mortgagor is to be regarded as owner of the estate as to all other persons than the mortgagee, yet he cannot create a tenancy after the execution of the mortgage which will be valid against the mortgagee, unless the mortgagee chooses to recognize the tenant as such. The mortgagee may, if he chooses, disavow the tenancy, and enter and evict the tenant, who will not be entitled even to emblements."

(6) In *Hunt* v. *Iron Co.*, 97 Mass. 279, one Slater leased railroad iron to the B. & M. Central Railroad, under an agreement made Sept. 23, 1854, which provided that in default of payment said Slater might take up and remove the iron, though the same should be put down and used on the railroad, and upon the payment of certain sums Slater agreed to "sell and deliver to said company the iron leased by him as aforesaid," and to release all his interest therein. The company laid the iron upon their road bed, and made default in payment. Slater (or Hunt through him) sought to remove the rails, and was resisted by the trustees of the bondholders under a mortgage given by the company to secure the bonds, and dated March 7, 1854. The court held that as between Slater and the prior mortgagees the rails were a part of the realty, and could not be removed; and, after citing and endorsing the doctrine of our cases *Pierce* v. *Emery*, 32 N. H. 484, and *Haven* v. *Emery*, 33 N. H. 66, say,—"Nor do we suppose that a mortgagor in possession is competent to bind existing mortgagees, by any arrangement to treat as personalty annexations to the freehold. The legal character of the rails, when once laid down, is determined by the law to be that of real estate. Mortgagees, as well as all other parties in interest, are entitled to the benefit of this rule of law, which can be taken from them only by their own waiver. * * * It [the agreement] is valid between the parties Slater and the original corporation, but binding upon prior mortgagees so far only as they have consented that the rails shall remain personalty."

(7) *Preston* v. *Briggs*, 16 Vt. 124, (8) *Frankland* v. *Moulton*, 5 Wis. 1, (9) *Jones* v. *Hancock*, 1 Md. Ch. Dec. 187, (10) *Kennedy* v. *Mason*, 3 Md. Ch. Dec. 186, (11) *Denmead* v. *Bank*, 9 Md. 179, (12) *Voorhees* v. *McGinnis*, 48 N. Y. 278, are all directly in point, and fully in accord with *Stantons* v. *Thompson*, and with the English and Massachusetts cases just cited.

(13) *Davenport* v. *Shants*, 43 Vt. 546, is the case relied upon by the defendants, and was a petition for foreclosure of a mortgage of a mill, factory, and lands, etc., executed by the defendants to the plaintiffs on the 13th day of October, 1866. The petition was taken as confessed by all the defendants except one Root, who answered setting forth that between the 3d day of August, 1866, and the 27th day of October, 1866, he sold to the defendants Shants & Co. certain machinery, upon condi-

tion that the same should remain the property of said Root until paid for ; that a part of the machinery was put into the building before and a part after the execution of said mortgage.

PECK, J., in delivering the opinion of the court, says,—" The proposition of the counsel for Root is, that the whole property sold conditionally to Shants & Co. was personal property as well after as before the sale, and cannot be claimed as fixtures or as parts of the realty. But we think * * that, on being put in place in the mill and factory, as shown in this case, it became so far annexed to the realty as to pass under a mortgage of real estate. But still the question remains, as between the mortgagee under his mortgage, and the original owner under his conditional sale to the mortgagors, which has the paramount right.

" First, as to that portion of the property put into the mill and factory before the orator took his mortgage, it appears that the orator having advanced his money and taken his mortgage in good faith, without notice of any lien or encumbrance upon it, and from its condition having reason to suppose that the mortgagor's title to this property in question was the same as his title to the realty, to which it was annexed and of which it was apparently parcel, seems to have a strong equity in his favor ; while, on the other hand, Root, the unpaid vendor, who endeavored to secure himself by stipulation in the sale that he should hold the title till paid, ought not to be deprived of this security without some substantial reason.

" But the defendant Root must have understood, when he sold the property to Shants & Co., that they intended to put the property to use in advance of the payment of the price, and from the kind and nature of the property he must have expected that in its use it must necessarily be annexed to the realty substantially in the manner in which it was, and thereby become apparently a parcel of the realty. What he knew, or had reason to suppose and did suppose, was to be done with the property, he must be taken to have consented to, as he did not object. Root, therefore, having by implication, at least, if not expressly, consented that the property might be incorporated with the realty of Shants & Co. in the manner it was, and they thereby become clothed with the apparent title as incident to their record title to the real estate, whereby the mortgagee was misled, and induced to part with his money on the credit of the property, the equity of the mortgagee is paramount to that of the conditional vendor. * * *

" But as to that portion of the property * * * which was put in place in the factory or mill after the execution of the mortgage, that not having been annexed to the realty at the date of the mortgage would not pass as incident to the realty, and the mortgage did not divest Root of his title. It having been placed in the building by the mortgagors after the execution of the mortgage, the mortgagee might hold it as against them, but not as against Root, the conditional vendor. As to this portion of the property the mortgagee was not misled, and advanced nothing on the faith of it."

In regard to this case, it is to be observed,—(*a*) It is put upon the ground of estoppel *in pais*, as if that were the foundation of the maxim,—"*Quicquid plantatur solo, solo cedit.*" On the contrary, the doctrine of estoppel, equitable or otherwise, has nothing whatever to do with the question. The owner of the freehold takes a chattel annexed to it by a stranger, not because he has thereby been "misled," or advanced anything "upon the faith of it," but by virtue of a technical rule of law, as old as the law itself, which, although it may, like many other similar rules, sometimes work inequity, has, in order to avoid greater mischief, for more than five hundred years hitherto been upheld and maintained by all common law courts, without, so far as I know, a single exception.

(*b*) But, treating it as a question of estoppel merely, the case cannot fairly be considered an authority against the plaintiff. The facts are materially different. Shants & Co. took no machinery from the premises after the date of the plaintiff's mortgage; they merely added more thereto. But here the case finds that Jones & Parks took out of the mill the water-wheel and saw, and put in a turbine water-wheel, etc.; and it must be assumed that the plaintiff permitted this to be done, upon the faith that the new was substituted in the place, and subject to all the incidents, of the old machinery. If this state of facts had existed in *Davenport* v. *Shants*, the decision must manifestly, upon the principles there adopted, have been the other way. There is plainly no sound distinction between the case of a mortgagee who takes his mortgage upon the faith that certain fixtures are a part of the realty, and of one who permits a portion of the property to be removed, and destroyed, it may be, upon the faith that such fixtures become a part of the realty. The mortgagee is "misled" and "induced to part with his property" by the consent of the chattel owner, that it might be incorporated with the realty of his conditional vendee, and by its annexation accordingly, as much in the one case as in the other.

(*c*) The mortgage law of Vermont is widely different from ours, resembling in most respects that of New York. (*Vide post.*) *Hooper* v. *Wilson*, 12 Vt. 695; *Lull* v. *Matthews*, 19 Vt. 322.

(*d*) The point decided was not raised by counsel, so far as appears from the case, but seems to have been taken up by the court *ex mero motu*, and disposed of not only without any discussion whatever, but also without consideration. No authority, not even *Preston* v. *Briggs*, was cited. In short, I submit that the case is to be looked upon rather as a monument of warning against the making of hasty and inconsiderate decisions, and against deciding cases upon the supposed equities thereof, whether real or imaginary, than as a precedent to be followed.

(14) *Tifft* v. *Horton*, 53 N. Y. 377, was an action of trover for a boiler and engine. The plaintiffs manufactured the boiler and engine for a Mrs. Brown, to be put up and used in her elevator. While the same were in the plaintiff's shop Mrs. Brown executed a chattel mortgage thereof to the plaintiffs, reciting that they were to be put up in her elevator, but were to remain personal property, and subject to the

right of the plaintiffs to enter the elevator and take the same in case the mortgage notes should not be paid. The notes were not paid, and the plaintiffs demanded the property of the defendants, who were in possession, claiming title thereto through three real estate mortgages, all executed before the engine and boiler were set up on the premises. These mortgages had been foreclosed, and upon the foreclosure sale bought by the defendants, but by stipulation, before the sale, the rights of the parties were not to be thereby affected. It was held that the plaintiffs were entitled to recover.

The court (FOLGER, J.,) say,—" I do not think that the prior mortgagee of the realty can interfere, before foreclosure and sale, to prevent the carrying out of such an agreement as that in this case. Had the mortgagees taken their mortgage upon the lands after the boilers and engine had been placed therein, under this agreement they would have had no right to prevent the removal of them by the plaintiffs upon the happening of the contingencies contemplated by it. The rights of a subsequent mortgagee are no greater than those of a subsequent grantee, and he, it is held, cannot claim the chattels thus annexed, and must seek his remedy for their removal, by virtue of such an agreement, upon the covenants in his conveyance of the lands (citing *Mott* v. *Palmer*, 1 N. Y. 564, and *Ford* v. *Cobb*, 20 N. Y. 344).

"A prior mortgagee, who certainly has not been induced to enter into his relation to the land, by the presence thereon of the chattels in dispute, subsequently annexed thereto, has no greater right than a subsequent mortgagee.

     *      *      *      *      *      *      *      *

" The agreement of the owner of the land with the plaintiffs, as it did fully express their distinct purpose that these annexations of boilers and engine should not make them a part of the real estate, was sufficient to that effect without any concurring intention of the defendants as prior mortgagees.

" Though the defendants became purchasers of the land on the foreclosure of the mortgages, yet they are to be considered, in this case, only as prior mortgagees of it. Such is the effect of the stipulation made by them, that the sale upon the decrees should not in any manner change the legal rights of the plaintiffs in this action ; but for this it would have been necessary to determine the effect upon the rights of the parties of the sale on foreclosure, and the change of title and possession of the lands, and the application to that state of facts of the principle laid down in *Lane* v. *King*, 8 Wend. 584, and kindred cases. It is proper to add, that the English case, cited and much relied upon by the defendants, has not been overlooked. * * * It is to be borne in mind, that in England and in Massachusetts the rights of a mortgagee of lands in the mortgaged premises are greater than in this state. He is regarded as the owner and the mortgagor in the light of a tenant, so that things annexed to the land become fixtures upon the land of the mortgagee, as it were."

Upon this case, it is to be observed,—(*a*) The court argue that, inas-

much as a subsequent mortgagee, or even grantee, could not by the law of that state hold chattels so annexed, therefore a prior mortgagee cannot. The logic may be good, but it is conceded here that the premises are unsound. (*Vide* Prop. 4.)

(*b*) The court hold that the agreement of the mortgagor alone, without any concurrence therein on the part of the mortgagee, whether his mortgage be prior or subsequent to the annexation, is sufficient to preserve the character of the property as a chattel until a foreclosure of the mortgage and sale of the premises.

(*c*) This doctrine rests upon the ground that by the law of New York a mortgagor is regarded, both in law and equity, as the owner of the fee, and as well after as before default, entitled to the possession of the premises, of which he cannot be deprived without his consent except by foreclosure. The mortgage is a mere chose in action, a mere personal security. It gives the mortgagee no title or estate whatever. The mortgagor remains the owner, and may maintain trespass even against the mortgagee. *Trimm.* v. *Marsh*, 54 N. Y. 604, and cases there cited.

(*d*) The distinction between this case and *Voorhees* v. *McGinnis* is to be found in the fact that in the latter there was an absolute foreclosure and sale, whereas in the former there was, so far as regarded the parties, no sale. The inference is strong that if there had been, the decision would have been the other way.

(*e*) The law of New York differs very materially from ours in respect to what are and what are not fixtures, as between vendor and vendee. Compare *Murdock* v. *Gifford*, 18 N. Y. 28, *Ford* v. *Cobb*, 20 N. Y. 344, *Mott* v. *Palmer*, 1 N. Y. 564, *Potter* v. *Cromwell*, 40 N. Y. 287, with *Despatch Line* v. *Bellamy*, 12 N. H. 205, *Wadleigh* v. *Janvrin*, 41 N. H. 503, *Lathrop* v. *Blake*, 23 N. H. 46, and *Burnside* v. *Twitchell*, 43 N. H. 390.

(*f*) And, finally, the court concede substantially that were their law of mortgage the same as that of England, Massachusetts, and our own, the defendants in that case must have prevailed. It is submitted, therefore, that the case is an authority in our favor rather than against us.

(15) *Crippen* v. *Morrison*, 13 Mich. 24, is also an authority in our favor rather than against us, and for the same reason. CAMPBELL, J., in delivering the opinion of the court, admits that "under the English rule, which gives the mortgagee an immediate right of possession, the mortgagor cannot give others a right he does not possess himself;"— and the case turned on the Michigan doctrine, that "the mortgagor, until actual foreclosure, is in possession by right and not by sufferance, and may make such arrangements for the use of the property as any other person could during the term.

(16) *Tibbetts* v. *Moore*, 23 Cal. 208, is not in point.

1. Both mortgages were chattel mortgages. No question of annexation to the freehold arose in the case, and the views of CROCKER, J., upon the supposition that the quartz mill was real estate, must be considered as *dicta* merely.

2. But if the question was properly before the court, the case cannot be deemed an authority here, because the principle there laid down cuts up by the roots the whole common law doctrine of title by annexation. The following is the pith of the decision, for which no authority is cited, and plainly cannot be: "We think it more consistent with the rules of equity to hold that the lien of the appellant's mortgage upon the engine and boiler dates only from the time they became attached to the realty, and, that time being subsequent to the date of the Lumbard mortgage, it is subject to the lien of the latter;"—that is to say, the title of A to his chattel, which he annexed to the freehold of B, being prior in point of time to that of B, must prevail.

The foregoing are all the cases that I have been able to find in which the exact question now before the court has been in anywise raised or considered. There may be others, but I feel confident that none can be found to disturb the weight of authority as here shown, even though it were to be estimated by the number of cases without regard either to the peculiar laws of the different jurisdictions, or to the good sense of the decisions.

VIII. The doctrine for which we contend does no injustice to the defendants.

1. Subject to the plaintiff's mortgage they own the machinery, while Jones & Parks own the rest of the premises. These defendants therefore are entitled as a matter of right to redeem. *Clary* v. *Allen*, 15 Gray 525; *Fletcher* v. *Chase*, 16 N. H. 38, 42, 43; *Moore* v. *Beasom*, 44 N. H. 215; *Bacon* v. *Bowdoin*, 22 Pick. 401.

2. It may be that the property is worth more, that more can be realized from it in its totality as a saw-mill, or it may be that more can be realized by severing the machinery, and disposing of that and the land separately;—how the fact is does not appear. But the defendants, after taking up the plaintiff's mortgage, may elect whichever course seems to them best. Inasmuch as the machinery is not, as between them and Jones & Parks, subject to the mortgage, or bound to pay off any part of it, the defendants may sever it at once, if they see fit, and hold the remainder of the premises until the whole mortgage debt is paid to them; or, they may hold and maintain the entire premises together until Jones & Parks pay not only the mortgage debt, but also the price of the machinery;—in other words, the defendants may elect to con- consider the machinery as personal or real estate, as they may think best for their interest.

On the other hand, if the court holds that the machinery is not subject to the plaintiff's mortgage, the plaintiff is put completely in the power of the defendants. They are under no obligation to sell it to him upon any terms. They may sever and move it, even though the effect may be to leave the remainder of the premises substantially worthless, while the machinery and land together, as a totality, are worth much more than the incumbrance upon both.

*Evarts W. Farr*, for the defendants.

I. The only question remaining for the determination of the court is this : Does machinery, annexed to mortgaged real estate after the execution of the mortgage, and which can be severed and removed without damage to the realty, pass to the mortgagee as between him and third persons? The authorities cited by the plaintiff, constituting simply a multifarious definition of the term "fixtures," fail to settle this point in the plaintiff's favor, and, in fact, are in the main silent upon the exact question raised in this case.

The court will perceive that many of the plaintiff's statements, which fall far short of the true questions at issue, though not necessarily conceded, may be assumed for the sake of brevity and more directness in treating the question or questions involved in the case.

Give the plaintiff the benefit of the doubt that this machinery annexed is realty as between mortgagor and mortgagee; assume that machinery analogous to that described in this bill, when annexed to real estate, loses its character as a fixture (using the term as defined by Bouvier), becomes part of the realty, and will pass to the mortgagee of the same :

1. As between him and the mortgagor in all cases, whether so affixed before or after the execution of the mortgage.

2. Between him and a conditional vendor,—(1) when annexed to the realty before the execution of the mortgage ; (2) when annexed to the realty after the execution of the mortgage, in such a manner that it cannot be severed and removed without tearing in pieces and materially injuring the building to which it is affixed.

II. These assumptions being applied to the case at bar, does the machinery in controversy pass to Cochran, the mortgagee, as against these defendants, who, it must be conceded, have never intentionally parted with their title?

We most strenuously insist that it does not pass, because (1) the machinery was annexed after the execution of the mortgage, and consequently it was not on the strength of this security that Cochran took his mortgage. Although between him and his mortgagor he may hold the machinery, between him and these defendants, whose money and labor have been expended in its construction, and for which they have received no remuneration, justice and equity demand that their title should be held paramount to that of the mortgagee. Furthermore, we maintain that between these parties the court should construe the doctrine of fixtures with at least as much liberality in favor of the conditional vendor as is held in favor of a tenant, under which construction this machinery clearly would be fixtures, and "removable against the will of the owner of the freehold." See 4 Pick. 310, 5 Cow. 323, 20 Johns. 29, 1 Denio 91. (2) This machinery being, as the case finds, annexed in "the manner in which such machinery is usually annexed to saw-mill buildings," may be removed without any material damage to the plaintiff's saw-mill building. Consequently we maintain that the same equity which might require machinery, which in its nature could not be removed without injury to the building to which it is affixed, to

pass to the mortgagee or general owner of the building as against the real owner of the machinery, would also require that machinery of this character, which may be removed, should be held by its real owner as against a mortgagee who took his mortgage long before the machinery was affixed. See authorities cited in the plaintiff's brief.

III. Balancing the equities of this case, we submit that, should the plaintiff be allowed to retain this machinery, he thereby acquires property for which he has never paid anything whatever, and on the strength of which he has never advanced any money or taken any security, and that the defendants thereby would be deprived of property for which they have received no consideration, and to which, to the best of their ability, they have endeavored to retain their title.

On the other hand, should the court refuse to restrain these defendants from removing their machinery, they simply render to each his own, without damage or diminution, and without doing violence to the legal or equitable rights of the plaintiff or defendants—a result in no other way attainable.

IV. Is this equity changed by the displacement of the old " up and down " saw ?

Laying aside the fact that this is a matter for adjustment between Parks & Jones and this plaintiff, we venture to remind the plaintiff that the court is sufficiently acquainted with the progress of invention in machinery for the manufacture of lumber, to find that in order to operate a saw-mill successfully against modern competition the mill of the past generation must be replaced by that of the present, and the removal of antiquated machinery is not a detriment, but rather a benefit, to the extent of the labor actually expended in its removal, especially when, as in this case, the machinery was not carried away or destroyed.

V. The precise question at issue in the case at bar has not been, as far as we are able to discover, adjudicated in this state. All the decisions involving the question of fixtures between mortgagee and third persons are predicated on the ground that these third persons stand in the same relations to the mortgagee, and are subject to the same rules of law and equity as the mortgagor himself. The language of the court in *Bean* v. *Brackett*, 34 N. H. 118, which the plaintiff quotes with so much approbation, ought not to be considered as going beyond this principle. In that case Palmer held the equitable title in the real estate, and Bean the legal, subject to the mortgage ; consequently it was " immaterial," as between them, which erected the building, because, in fact, they both stood in the same position ;—but to lay this down as a general principle which shall govern in all cases between mortgagees and third persons is at least extrajudicial, and in no instance sustained by the authorities there cited in its support.

VI. In conclusion, it must be admitted, notwithstanding the voluminous citations of the plaintiff, that the authorities really covering the vital questions at issue in this case are not numerous. Omitting the many possible citations bearing more or less directly upon the minor

and unimportant points in the case, we desire to call the attention of the court to the following, as directly in point in support of the defendants' positions: 43 Vt. 546 ; *Davenport* v. *Shants & Co.*, cited in Am. Law Reg., vol. 11, p. 60 ; *Godard* v. *Gould*, 14 Barb. 662 ; *Clark* v. *Wells*, 45 Vt. 4, and cases cited.

In *Davenport* v. *Shants et als*, the court held that as to machinery put into the mill subsequent to the execution of the mortgage, the title of the conditional vendor was paramount to that of the mortgagee. In *Godard* v. *Gould*, the court held that machinery sold conditionally, and annexed to real estate, did not pass to the vendee of the realty as against the conditional vendor. In *Clark* v. *Wells*, the court make the distinction which we insist upon between accession which amounts to a confusion, and annexation without loss of identity, and hold that one making repairs upon a stage wagon, by supplying new wheels and iron axles, for which he has taken a note, with an agreement that the running part of the wagon shall remain his until paid for, may hold and remove the same from the old axle stock to which it is fastened by the old clips and nuts, as against a *bona fide* purchaser of the whole wagon from a person not a party to this agreement, and without notice of it.

And we respectfully submit that these decisions are so far in conformity with justice and equity, that in the absence of any adverse adjudication they should govern in the decision of this case.

*Bingham & Mitchell*, for the defendants, on the plaintiff's motion for rehearing.

I. We desire to call the attention of the court to some new authorities which sustain the opinion heretofore announced in this case, and which have come to our notice since we furnished our last brief. This brief we furnish only as additional to our former briefs and oral arguments, and desire that they should all be considered on this motion, because we stand by the positions taken, and claims made in them.

Notwithstanding the very able and lengthy brief of the plaintiff on this motion, the soundness and correctness of the court's reasoning and conclusion become more apparent as the question is considered. And the courts of other jurisdictions, so far as we find they have considered this and analogous questions, have by the same course of reasoning reached similar conclusions.

The plaintiff's position when assailed by reason,—" the life of the law," —and by logic, is found pregnable, while the defendant's position is impregnable ; and this conclusion we think the plaintiff must have reached ere he finished his last brief. Our position enables the law to fulfil its true mission, viz., to protect a man in the possession and enjoyment of his property. By granting the plaintiff's claim, the law would be instrumental in robbing a man of his property without consideration, and against his consent, by fine theories and subtle distinctions. This is really the issue in this case, and no amount of theorizing or speculation can obscure it.

II. There is nothing in this case, or in the nature of it, requiring that it should be taken out of the general rule so well settled in this state, viz., that a party must establish his right at law when he has there an adequate remedy. The demand is for machinery, the title to which is disputed. It is not the province of a court of equity to establish disputed rights, but to protect and limit those which are either established or acknowledged. There is nothing here showing irreparable injury, or an injury which is incapable of being compensated in damages. For authorities on this point, we ask the attention of the court to those cited on this point in our former briefs.

III. The case finds that this machinery was annexed as such machinery is " usually annexed." By that we regard it as clear that the character of annexation is such that the machinery may be taken out without its destruction or material injury to the building: the machinery is entire and can be identified: it is not incorporated into the building. *Wetherby* v. *Foster*, 5 Vt. 136; *Tobias* v. *Francis*, 3 Vt. 425; *Sturgis* v. *Warren*, 11 Vt. 433; *Cross* v. *Marston*, 17 Vt. 534; *Swift* v. *Thompson*, 9 Conn. 63; *Taffe* v. *Warwick*, 3 Blackf. 111; *Cressen* v. *Stout*, 17 Johns. 116; *Walker* v. *Sherman*, 20 Wend. 636; *Farrar* v. *Chauffetete*, 5 Denio 527; *Vanderpool* v. *Hewitt*, 1 Ohio N. S. 11; *Gale* v. *Ward*, 14 Mass. 352.

IV. In his brief the plaintiff says, in substance, that the legal conclusion to be drawn from the conditional sale of this machinery by the defendants to Parks is, " that the defendants authorized them to put the machinery to its ordinary and usual use." He then, in effect, asks the court to decide that one part of the " ordinary and usual use " of such machinery was, to become legally incorporated into some real estate, and be incapable of separation from it. Virtually, he claims that one branch of the " ordinary and usual use " of this machinery was, to work a metamorphosis in its nature, and change it from personal to real property.

V. The plaintiff further says, that " the defendants did assent to and authorize the annexation." By this the plaintiff means that the defendants not only delivered possession of the machinery to Jones & Parks, to be theirs when it was paid for, but assented to and authorized its annexation to mortgaged premises, and assented to and authorized its assignment to a third person, because that is the effect of his claim. With equal propriety it might be said that A assented to and authorized a sale of a horse to C, which A had sold conditionally to B. There is nothing here to warrant this. In a conditional sale, all the law will imply is, that the vendee and his assignee will get title to the property upon the performance of the condition; and until the condition has been performed, the owner can pursue and reclaim it in the possession of whomsoever he may find it so long as the thing itself exists. See authorities by us cited in former briefs. In effect, according to the plaintiff's claim, the annexation, though made by Jones & Parks, was legally made by the defendants in consequence of the authority they had given them. The law will not infer assent or authority from the acts of the defendants. *Cross* v. *Marston*, 17 Vt. 535.

If in this matter Jones & Parks were the agents of either party, they were the agents of the plaintiff, and, if they were his agents in annexations to and improvements on those premises, then the plaintiff can stand no better than Jones & Parks ; and they upon the plaintiff's concession could not hold the machinery.

VI. The intention of the parties is one of the strongest elements in determining whether a thing has lost its legal existence as a chattel or not.  *Shoemaker* v. *Simpson*, decided by the supreme court of Kansas, and published in the Central Law Journal for February, 1876 ; *Eves* v. *Estes*, 15 Am. Law Rep. 345 ; *Haven* v. *Emery*, 33 N. H. 66 ; *Dame* v. *Dame*, 38 N. H. 429 ; *Hunt* v. *Bay State Iron Co.*, 97 Mass. 279 ; *Wagner* v. *Cleveland & Toledo R. R.*, 22 Ohio 563 ; *Hines* v. *Ament*, 43 Mo. 298 ; *Fuller* v. *Tabor*, 39 Mo. 519.

If rails are laid along the line of an intended fence, they pass under a deed of the land—*Conckling* v. *Parsons*, 1 Chand. 240–244 ; while if, by mistaking the boundary line, A builds fence on land of B, the fence remains the personal property of A, and can be removed by A as against any one.   See *Hines* v. *Ament*, 43 Mo., and *Fuller* v. *Tabor, supra*.   The intention of the defendants here is clear, viz., to retain the title to the machinery until they were paid for it.

VII. Another element which impresses on property the character of personalty, when without it it would be part of the freehold, is " the agreement of parties " which " supersedes the general rule of the law." *Haven* v. *Emery*, 33 N. H. 66 ; *Wells* v. *Bannister*, 4 Mass. 415 ; *Doty* v. *Graham*, 5 Pick. 487 ; *Osgood* v. *Howard*, 6 Greenl. 452 ; *Russell* v. *Richards*, 1 Fairf. 429 ; *Hilbourn* v. *Brown*, 3 Fairf. 162 ; *Leland* v. *Gassett*, 17 Vt. 408 ; *Mott* v. *Palmer*, 1 Com. 564.

In this case we have the element of " agreement " in the most positive manner.

VIII. By adjunction, as the civilians called it, a man may lose the right to reclaim his property.   Adjunction may be by inclusion, soldering, sewing, writing, or painting.   In these cases the accessory follows the principal, on account of the importance and value of the principal.   But in the case of a valuable painting being put on a less valuable canvass, the painting, on account of its greater value, drew to it the canvass, instead of the painting's following the canvass.

If the plaintiff were content with the application of this doctrine of the civilians to this case, the machinery of the value of ten or eleven hundred dollars would be on account of its value the principal, and draw with it the old Dorchester mill, of the value of two or three hundred dollars.

Adjunction by construction may also deprive a man of a right to reclaim his property sometimes,—as, when the bricks, nails, shingles, boards, etc., of A are incorporated into and used in the construction of the building of B.   But this is entirely upon the ground that these articles have lost their identity, and consequently cease to have a legal existence as chattels,—and, in that case, the owner of the freehold is by law entitled to them, not " by virtue of his legal estate in the land,"

but because the things have lost their identity. It is the loss of identity which works the change in the nature of the property. See *Cross* v. *Marston*, 17 Vt. 540, and other cases before cited. In this case the machinery cannot have become the plaintiff's by adjunction, because it has not lost its identity.

IX. " The plaintiff claims by virtue of his legal estate in the land."

1. This was the defendant's claim in *Haven* v. *Emery*, 33 N. H. 66 ; but the court held that " the agreement of parties * * supersedes the general rule of the law."

2. In *Dame* v. *Dame*, 38 N. H. 429, the defendants claimed that a house and barn, erected by the consent of their grantor, was covered by their " estate in the land ;" but the court held otherwise, and said that the law in relation to fixtures " is liable to be changed and modified in any way by the agreements made by the parties on the subject ; and so far as such agreements extend, the question is no longer what is the common law, but what have the parties agreed."

3. A, with B's consent, erected a mill on B's land, and B subsequently executed a deed for the land and mill ; but the court held that the conveyance passed no title to the mill, because it was A's property. *Russell* v. *Richards*, 1 Fairf. 429.

4. So, also, rails built into a fence by A on B's land, with B's consent, did not pass by B's deed of the land, because the deed covered but real estate, and in consequence of A's ownership of the rails they never became part of the freehold, but remained personal property. *Mott* v. *Palmer*, 1 Comstock 564.

5. Where A borrowed of B a set of drawers, and annexed them to A's store in such a way that had A owned them his grantee of the store would hold them,—yet as between B who owned the drawers, and A's grantee, the court held that the drawers were still personal property, and belonged to B. *Cross* v. *Marston*, 17 Vt. 537.

It was the ownership of the drawers, coupled with the fact that their identity was not lost, which gave character to this property. The court say,—" It is a principle of law, in relation to this subject, that the owner may pursue his property wherever he can trace it. But when the property has lost its identity it ceases to have its legal existence ;—as, if one man should convert a quantity of bricks, and erect them into a house, and then deed the house to a third person, these bricks will have lost their identity: they are so changed in their character that they cease to be chattels, and the owner cannot pursue them against such third person. But in this case there was no such change of property as would give it a different character. The nailing it to a building did not incorporate it into and make it a part of the building."

6. A sold B twenty-three salt-kettles, and at the time of the sale took from B a chattel mortgage of the kettles. B annexed the kettles to his salt-works in such a way that they would pass under his conveyance of his salt-works if he had owned them ; but as between A, and B's grantee of the land, it was held that the kettles were personal property. *Ford* v. *Cobb*, 20 N. Y. 344.

The controlling elements here were like those in the case at bar, viz., the agreement of the parties, and special relation between the parties in interest. The court, in this case, after recognizing the doctrine of adjunction as herein conceded by us, say,—" But it is otherwise with things which, being originally personal in their nature, are attached to the realty in such a manner that they may be detached without being destroyed or materially injured, and without the destruction of or material injury to the things real with which they are connected; though their connection with the land or other real estate is such, that, in the absence of an agreement, or of any special relation between the parties in interest, they would be a part of the real estate."

7. *Davenport* v. *Shants*, 43 Vt. 546, has, in a former brief, been cited and commented upon by us. It is a case directly in point. We do not concede, as assumed by the plaintiff, that we agree with the doctrine there laid down in reference to the rights of a mortgagee to property annexed before his mortgage. Still, for the purposes of this case, it is not necessary for us to attack this position, as the case settles the point in our case exactly in accordance with our claim.

8. In the case of *Adams* v. *Lee*, decided by the supreme court of Michigan in 1875, cited in the American Law Register for July, 1875, which was cited by us in a former brief, it was held, that, to change machinery of this character from personal property to a parcel of the real estate, it is necessary that there should be unity of ownership of land and machinery. So that, to change this machinery from personal to real property, Jones & Parks must have had title to machinery and land at the same time: and this it is conceded they never had. In the last case cited, the court said,—" When the ownership of the land is in one person, and of the thing affixed to it is in another, and in its nature is capable of severance without injury to the former, the latter cannot, in contemplation of law, become a part of the former, but must necessarily remain distinct property, to be used and dealt with as personal estate."

9. Another case directly in point is where A manufactured for and delivered to B a steam engine, and at the time of delivery took from B a chattel mortgage of it. B placed the engine in a mill, which, like the principal case, was mortgaged at the time. The real estate mortgage was subsequently foreclosed, and the premises were purchased by C, who claimed the engine, like the plaintiff here, " by virtue of his legal estate in the land;" but the court held that as between A and C the engine was a chattel, and belonged to A, who manufactured it. *Eves* v. *Estes*, 15 Am. R. 354.

In delivering the opinion of the court in this case, KINGMAN, C. J., said,—" When we consider the purpose of the parties, as evinced by the mortgage, to make the engine retain the character of a chattel, * * and as the mortgage violated no principle of law, wrought no injury to the rights of any, and was in the interest of trade, we have no doubt that the engine continued to be personal property." The court also held, that, if the manner of the attachment of the engine to

the mill is such as to leave the mind in uncertainty as to whether it became part of the freehold, they would look to the intention of the parties as controlling. Here it is evident that it was the agreement, intention, and relation of the parties which controlled in determining the character of this property.

10. *Shoemaker* v. *Simpson*, decided by the supreme court of Kansas in 1875, and published in the Central Law Journal of February 25, 1876, is another case directly in point. A took twenty-six bars of B's railroad iron and attached them to a railroad track on C's land; and by virtue of its annexation to his land C claimed the iron. The court held that the rails belonged to B, and said,—"An owner of personal property cannot, against his will, be deprived of the same by having it attached to the real estate of another by a third person, when such personal property can be removed from such real estate without any great injury to the real estate. * * It being real estate as between the defendants (C) and the railroad (A), or any other person in the world except the plaintiff (B), would not enable the defendants to re cover. * * The intention of the parties is one of the strongest elements in determining questions of this kind."

X. Each of the persons claiming the thing affixed or annexed in the above cases, claimed it " by virtue of his legal estate in the land," as the plaintiff in this case does. Each had the " legal estate in the land " and all that was covered by that estate, as the plaintiff in this case may have. But the courts invariably held that the " legal estate in the land " did not cover property situated like this machinery, when there was an intervening agreement, intention, and relation of the parties which controlled and gave a different character to the property.

It is clear, then, according to the above cases, that this machinery thus situated was not a parcel of the freehold, and was not included in this plaintiff's legal estate in the land. As to what was the legal estate in the land must be determined according to the relation of the parties to property on or annexed to the land or building. No arbitrary rule can be fixed to govern all cases : each must be determined according to its own peculiar facts, having in view the rights of the respective parties interested.

The theory sustained by these cases and by common-sense, we submit, is, that the plaintiff's title is derivative, and derived from the plaintiff's mortgagor, and consequently he takes only that which his mortgagor owned and could convey to him.

XI. The law has established and recognizes a more liberal rule in regard to fixtures between lessor and lessee, than it does between vendor and vendee, or mortgagor or mortgagee,—and why? One element which causes the difference in the rule is the lessee's intention not to make permanent improvements on the leased real estate, but an intention to annex for the purpose of trade only, to be removed on the termination of the tenancy. Another element is the relation of the parties, and a third is the encouragement of trade. Each of these elements exists in our favor in this case, and in addition we have the

agreement of the parties and the established law of our state in relation to the rights of a conditional vendor of personal property. So, in brief, the distinguishing elements which determine the character of property similarly situated are all in our favor, viz., the agreement, intention, and relation of the parties, the encouragement of trade, and the recognized rights of a conditional vendor.

XII. The point decided in every case cited, and relied upon by the plaintiff in his brief, is distinguishable from the point at issue in this case. For instance, in the case of *Landon* v. *Platt*, 34 Conn. 521, the house claimed was erected by the owner of the land himself. This case recognizes the doctrine for which we contend. In *Richardson* v. *Copeland*, 6 Gray 536, the chattel mortgage was made after the machinery was put into the mill. *Hunt* v. *Bay State Iron Co.*, 97 Mass. 279, was where the mortgagee had notice, and this question did not arise. In *Bartholomew* v. *Hamilton*, 105 Mass. 239, it was decided that an assignee of a mortgage took the mortgage charged with the notice of his assignor, the mortgagee, and held only what the mortgagee held because his title was derived from the mortgagee. Upon the same principle, a mortgagee getting his title from his mortgagor should hold only that which his mortgagor held, and should be charged with the notice of his mortgagor. The case of *Stantons* v. *Thompson*, 49 N. H. 272, as reported, is not an authority, because the question was not considered. The recollection or impression of counsel in another case ought not to prejudice the right of our clients here. Neither should the intimations of judges in deciding other questions be authoritative in deciding this question. Cases in which the issue is raised, met, and decided should be authority, and those alone.

LADD, J. The exact mode in which this machinery was affixed to the saw-mill building is not stated in the case; but from the course of the argument, and from what does appear in the case, it is to be assumed that, if it had been made by the owner in the same way, those movable things would have lost their independent character as chattels, becoming part of the immovable thing—the mill—so as to be included in its description and follow its ownership;—that is, they were so affixed that they would have passed as part of the realty between grantor and grantee. At the same time, the machinery was not incorporated into the building in such way that its legal identity was lost. It was not made part of the mill by adjunction, in the civil law sense of that word, like nails, or paint, or bricks, or a beam or rafter: it might be removed without destruction or material injury to the building. As between the conditional vendors,—that is, the legal owners and Jones & Parks,—the former might lawfully remove it. The question is, whether the mortgagee of Jones & Parks, whose mortgage was executed before the machinery was put into the building, has greater rights with respect to it than had Jones & Parks themselves, and if so, whence those rights are derived.

This question is, to my mind, a very narrow and a very simple one,

and is conclusively answered in the negative by the fact that Jones & Parks did not own the property at the time it was affixed to the building, and had not the assent of the owners, either express or implied, to annex it to the freehold or add it to the mortgage interest of any other person.

The discussions of counsel have taken a very wide range; and as almost all that has been said, and almost all the cases to which we have been referred, seem to me quite wide of the true ground upon which the case must be decided, it is necessary to examine with some care each step of the short process by which my conclusion has been reached.

Assuming, then, that the machinery can be removed without destruction or material injury to the building, are we right in our first proposition, that, as against Jones & Parks, the defendants might lawfully take it away? Upon this point I suppose there can be but one opinion. The cases, so far as I have examined them (and I have looked into all that have been referred to by counsel, and many others), are all one way. Jones & Parks might agree that the machinery should remain a chattel, and they would be bound by that agreement. By force of the agreement it would retain its original character and attributes after it was placed in the mill, the same as before; it would not become annexed in law to the real estate at all. The title to it would not be changed, and the owners might of course retake it, according to the agreement made for their security, because it was still their own. *Haven* v. *Emery*, 33 N. H. 66.

How has the mortgagee acquired a greater right with respect to it than the mortgagors ever had? Certainly not by contract. Has he by any act of the owners?

Upon the first argument of the cause, it was suggested by the court that the rights of the mortgagee rest upon and are derived from the mortgage, and that until the machinery became the property of the mortgagors, either by contract or accession, or in some other way, their previously existing mortgage could not have any operation or effect upon it. There was no ground upon which to claim that the title passed by any application of the doctrine of estoppel, because the machinery was not affixed to the mill until after the mortgage was executed; and it did not then occur to the court that there was any ground upon which it could be claimed that the owners of the property had consented that it should be annexed in law to any real estate in such way that their title and ownership of it would be gone. But counsel say this suggestion of the court was based upon the fundamental error of assuming that the mortgagee makes, and must make, his title to the machinery through Jones & Parks, whereas such is not the fact at all. But the plaintiff claims the machinery by virtue of his legal estate in the land, as if he were an absolute grantee of the premises. The argument is, that, in determining the question of title between the mortgagee and the conditional vendors, the former is to be regarded as the absolute owner of the realty.

Let this view be accepted. The plaintiff's contention, then, assumes this form : The act of Jones & Parks in affixing these movable things of the defendants to the real estate of a third person had the effect of an annexation in law, whereby the title immediately passed from the owner to such third person ;—that is to say, A, having in his possession chattels belonging to B, affixes them to the real estate of C in such manner that they would pass by deed, but not so but that they can be removed without material injury to the realty. By this act of A the title to the chattels is passed from B to C. Nothing can be more certain than that the proposition, stated in this broad and unqualified way, cannot be sustained.

The rule is—and this is elementary—that the movable must be affixed by the owner of it, and affixed in the course of his general use and occupation of the immovable ; and I venture the remark that not a case can be found where it is held that the owner would be divested of his title if the movable thing is affixed without his consent, either express or implied. *D'Eyncourt* v. *Gregory*, Law Rep., 3 Eq., 394. The cases are not agreed as to the legal rights of the parties where the chattel is not affixed by the owner, but is affixed with his consent but without any intention of transferring the property in it, or is affixed by the owner with the intention and upon some agreement that it shall remain a chattel and shall not pass. Compare, for example, such cases as *Crippin* v. *Morrison*, 13 Mich. 23, and *Ford* v. *Cobb*, 20 N. Y. 344, with *Clary* v. *Owen*, 15 Gray 522, and *Hunt* v. *Iron Co.*, 97 Mass. 279. The number of cases, English and American, bearing upon this question one way and the other, is pretty large, and, upon a tolerably careful examination of many of them, I am not now prepared fully to admit, with the plaintiff's counsel, that either the weight of authority or the weight of reason is in favor of the conclusion that the property in the movable thing would, under such circumstances, pass to the owner of the immovable. But, to save discussion of this controverted point, let it be conceded that the Massachusetts cases enunciate the true rule,—that in the case of things affixed, with the consent of the owner, while no change of property is effected as between the owner and the person affixing them, still, for other purposes, and as concerns third persons, all the usual consequences of annexation follow : how, then, does the present case stand ?

This machinery was delivered by the defendants to Jones & Parks, upon a written agreement that it was " to remain the property and subject to the order of C. M. Flint until paid for in full." Now, it is said that the nature of the property was such that the inference is irresistible that the defendants knew it was to be affixed by Jones & Parks, and used by them in connection with real estate ;—and that this is so there can be little doubt. Machinery for a saw-mill is ordinarily affixed to a building, and steadied and kept in place there by means of some connection more or less intimate with the structure where it is set up.

It is further contended, that, upon the bill and answer, the defend-

ants must be taken to have expressly assented to its annexation to the particular mill in question. Neither the bill nor the answer is sworn to, and I do not find anything in those documents to show such express assent. The allegation of the bill on this point is not very clear. Perhaps, however, it is sufficiently alleged that the machinery was put into the mill with the knowledge and consent of the defendants, although it is not alleged that they had knowledge of the mortgage. This allegation is distinctly denied by the answer, except that Flint understood it was to be set up and used at some place at or near West Rumney. These allegations by way of pleading do not seem to add to or subtract from the statement of facts found in the printed case.

Let it be taken, then, that the defendants gave their assent that the machinery should be affixed to real estate in such way that it would pass by a deed of the land. Such consent was not express. It is an inference, but an inference which, I think, may be, and fairly ought to be, drawn from the nature of the thing, and the ordinary mode of its use.

The purpose of the agreement was, to secure the defendants against the consequences which would follow a delivery and annexation of the property without it. As between them and the vendees it was a legal and valid agreement, and, as we have seen, had the effect to prevent an annexation in law, retaining in the thing affixed the nature of a chattel. Now, in the face of this agreement, what is the extent of the inference which can fairly, or, indeed, with any show of reason, be made? Certainly it is that the vendees should affix the machinery to their own mill, and not to the mill of another.

An assent by A that his chattel may be affixed by B to the real estate of C, is, upon our assumption, an assent by A that his property become the property of C. How can such an assent be inferred without a particle of proof to sustain it, and directly against an express stipulation that the thing shall remain the property of A until it is paid for in full? I confess it seems to me almost too plain for argument or illustration, that the consent of the defendants that this machinery might be affixed to and used with real estate, which is to be inferred from the nature of the property and the ordinary mode of its use, was a consent that it be affixed to and used with the real estate of Jones & Parks, and not a consent that it be annexed in law to the real estate of a third person, whereby the express agreement of the parties should be wholly nullified, the security of the defendants lost, and their title transferred, without consideration and without their consent, to a stranger. The inference we are called upon to draw is, that the defendants consented to an appropriation of their property by Jones & Parks entirely inconsistent with the agreement. Suppose Jones & Parks, after getting the machinery into their possession, had undertaken to make an outright gift of it to some friend, or sold it to the first customer they met, or executed a chattel mortgage of it to secure a creditor: would such disposition be consistent with the agreement? Could not the defendants have retaken it from the donee, the vendee, or the mortgagee, in either of the cases supposed, by virtue of their paramount title and right?

Suppose such donee, vendee, or mortgagee had affixed the machinery to his real estate, and commenced using it there : should we be asked to infer the consent of the defendants from the fact that the property was designed to be used in connection with real estate ? Jones & Parks might as well give the property to a stranger in one way as another. The difference is only a very slight difference in form—whether they make the gift by affixing it themselves to the realty of a stranger, or hand it over to the stranger and suffer him to make the annexation himself. The substance is the same : one act is no less inconsistent with their agreement than the other. The consent of the defendants to the act can no more be inferred from the nature of the thing in one case than in the other.

But it is contended that the defendants' knowledge that the machinery was to be put up and used in a saw-mill building was enough to put them upon inquiry as to the title of the mill to which it might be affixed by Jones & Parks, and that, inasmuch as they ought to have inquired, they must be charged with the knowledge they would have gained by inquiry, namely, the fact that the mill of Jones & Parks was under a mortgage to the plaintiff. We are referred to no case which gives countenance to such a claim, and I certainly think it cannot be maintained. The transaction was a conditional sale of personal property. The vendors were not acquiring any interest whatever, by way of security or otherwise, in any real estate. How can it be said that even a very cautious man would have thought to inquire of the purchasers whether they owned the mill into which the machinery was to be put, or whether there was any mortgage on it? Perhaps such a man might have made such an inquiry. But the question is not what a very cautious man might or probably would have done. That is not the rule. The rule which, I conceive, must apply to cases of this sort, is the second rule laid down by Vice-Chancellor WIGRAM in *Jones* v. *Smith*, 1 Hare 43, namely,—When the conduct of the party charged evinces that he had a suspicion of the truth, and wilfully and fraudulently determined to avoid receiving actual notice of it, then he is to be treated as though he had the knowledge which he has so studiously avoided obtaining. It need not be said that there is no evidence whatever before us to bring this case within this rule, or that tends at all in that direction. Indeed, there seems to be little more reason why the defendants, after the execution of the agreement, should inquire if the mill of Jones & Parks was under a mortgage, than that they should inquire if Jones & Parks had creditors, to whom they might, in violation of the agreement, attempt to convey the machinery for security.

I think it is very clear that there was no assent of the defendants, either express or implied, that their property should be affixed to the real estate of any person except their vendees, Jones & Parks.

With respect to the remark of BELLOWS, J., in *Stantons* v. *Thompson*, 49 N. H., at page 276, upon which so much stress has been laid in the argument, it would probably be enough to say that the case had been once

or twice tried by jury, and twice transferred upon questions of law before the questions reported as above were decided. If any question as to the mode of annexation was made, it must have been settled before upon rulings to which there was no exception, or which had been sustained by the court. But however that may be, the case is distinguished from the present, as I understand, by a broad and impassable difference in the facts. I am informed that the annexation in that case was made by the owners of the machinery. Perhaps that fact sufficiently appears upon page 272 of the report. If I am right in reference to this fact, the case would seem to stand in the same category as *Clary* v. *Owen*, 15 Gray 522, and other similar cases; and the *dictum* referred to is no authority whatever against the conclusions at which I have arrived.

If the court held, by an unreported decision, at any stage of the litigation in *Stantons* v. *Thompson*, that where A, having in his possession the movable thing of B, annexes it without the knowledge or consent of the owner to the real estate of C, it thereupon, and by force of that act alone, becomes the property of C, I must repeat the remark that, so far as my investigations have extended, the case would stand alone, and the decision would be so manifestly contrary to reason and justice, as well as the fundamental principles of law relating to the acquisition and ownership of property, that I could only follow it from a sense of duty that would amount to moral compulsion.

I think the injunction should be denied.

CUSHING, C. J., and SMITH, J., concurred.

*Bill dismissed.*